IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| MICHAEL FEHRENBACHER, Individually and On Behalf Of All Others Similarly Situated,   :<br>  :<br>  :<br>Plaintiff,   :<br>  :<br>-against-   :<br>  :<br>  :<br>XYBERNAUT CORPORATION, EDWARD G.   :<br>NEWMAN, STEVEN A. NEWMAN, M.D.,   :<br>AND THOMAS D. DAVIS,   :<br>Defendants.   : | C.A. No. 05-256-SLR |

---

[additional captions on the following pages]

## BRIEF IN SUPPORT OF THE MOTION OF THE FEHRENBACHER SHAREHOLDER GROUP FOR CONSOLIDATION OF ALL RELATED ACTIONS, APPOINTMENT OF LEAD COUNSEL, AND APPROVAL OF PROPOSED LEAD PLAINTIFFS' SELECTION OF LEAD COUNSEL

**CHIMICLES & TIKELLIS LLP**
Pamela S. Tikellis (#2172)
Robert J. Kriner (#2546)
A. Zachary Naylor (#4439)
Robert Davis (#4536)
One Rodney Square
P.O. Box 1035
Wilmington, Delaware 19899
(302) 656-2500

**SARRAF GENTILE LLP**
Ronen Sarraf (of the New York bar)
Joseph Gentile (of the New York bar)
111 John Street, 8th Floor
New York, NY 10038

**LAW OFFICES OF BRUCE MURPHY**
Bruce Murphy, Esq.
265 Llwyds Ln.
Vero Beach, Florida 32963
(772) 231-4202

June 14, 2005

ROBERT H. AYLOR, JR., On Behalf Of                    :
Himself and All Others Similarly Situated,            :
                                                      :                    C.A. No. 05-222-SLR
                                    Plaintiff,        :
                                                      :
                                                      :
                      -against-                       :
                                                      :
                                                      :
XYBERNAUT CORPORATION, EDWARD G.                      :
NEWMAN, STEVEN A. NEWMAN, M.D., and                   :
THOMAS D. DAIVS                                       :
                                Defendants.           :


MOSHE TAL, Individually and On Behalf Of             :
All Others Similarly Situated,                        :
                                                      :                    C.A. No. 05-242-SLR
                                    Plaintiff,        :
                                                      :
                      -against-                       :
                                                      :
                                                      :
XYBERNAUT CORPORATION, EDWARD G.                      :
NEWMAN, STEVEN A. NEWMAN, M.D., and                   :
THOMAS D. DAVIS,                                      :
                                                      :
                                Defendants.           :

JEFFREY M. JASKOL AND STACEY J.           :
JASKOL, Individually and On Behalf Of All :
Others Similarly Situated,                :
                                          :    C.A. No. 05-268-SLR
                            Plaintiff,    :
                                          :
            -against-                     :
                                          :
                                          :
XYBERNAUT CORPORATION, EDWARD G.          :
NEWMAN, STEVEN A. NEWMAN, M.D.,           :
THOMAS D. DAVIS, BRUCE C. HAYDEN and      :
GRANT THORNTON, LLP,                      :
                           Defendants.    :

JOSEPH DANIEL WAUHOP, On Behalf Of        :
Himself and All Others Similarly Situated, :
                                          :    C.A. No. 05-310-SLR
                            Plaintiff,    :
                                          :
            -against-                     :
                                          :
                                          :
XYBERNAUT CORPORATION, EDWARD G.          :
NEWMAN, STEVEN A. NEWMAN, M.D.,           :
THOMAS D. DAVIS, JOHN F. MOYNAHAN and     :
GRANT THORNTON, LLP,                      :
                           Defendants.    :

CHRISTINA W. DONNELLY, JOHN     :
DONNELLY, JAMES G. WILLIAMSON and    :
RICHARD W. DEARBORN, Individually and On  :
Behalf Of All Others Similarly Situated,    :
    :
               Plaintiff,   :
    :
       -against-     :
    :
    :
XYBERNAUT CORPORATION, EDWARD G.   :
NEWMAN, STEVEN A. NEWMAN, M.D.,    :
THOMAS D. DAVIS, BRUCE C. HAYDEN and  :
GRANT THORNTON, LLP,     :
            Defendants.  :

C.A. No. 05-334-JJF

---

CHARLES W. SMITH, Individually and On   :
Behalf Of All Others Similarly Situated,    :
    :
               Plaintiff,   :
    :
       -against-     :
    :
    :
XYBERNAUT CORPORATION, EDWARD G.   :
NEWMAN, STEVEN A. NEWMAN, M.D.,    :
THOMAS D. DAVIS, BRUCE C. HAYDEN and  :
GRANT THORNTON, LLP,     :
            Defendants.  :

C.A. No. 05-354-SLR

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

NATURE OF THE CASE ..........................................................................................................1

I.      Introduction.................................................................................................................1

II.     Stage of Proceeding ....................................................................................................2

SUMMARY OF ARGUMENT ..................................................................................................3

STATEMENT OF FACTS ..........................................................................................................4

I.      Substantive Factual Allegations...................................................................................4

II.     The Movants ................................................................................................................8

ARGUMENT.............................................................................................................................10

I.      The Above-Captioned Actions Should Be Consolidated ..................................................10

II.     Movants Should Be Appointed As Lead Plaintiffs For The Class In The
        Consolidated Action..........................................................................................................11

        A.      The Procedure Mandated By The PSLRA For Appointment
                of Lead Plaintiffs....................................................................................................11

        B.      Movants Satisfy The Lead Plaintiff Requirements Of The PSLRA .....................12

                1.      Movants Have Complied With The Procedural
                        Requirements Of The PSLRA ....................................................................12

                2.      Movants Have The Largest Financial Interest In The Relief
                        Sought By The Class...................................................................................13

                3.      Movants Satisfy The Requirements of Rule 23 Of The
                        Federal Rules Of Civil Procedure ..............................................................16

                        a.      Movants' Claims Are Typical........................................................19

                        b.      Movants Are Adequate Representatives.........................................19

III.    The Court Should Approve Movants' Choice of Lead Counsel.........................................20

CONCLUSION...........................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Berger v. Compaq Computer Corp.*,
257 F.3d 475 (5th Cir. 2001) ....................................................................................19, 20

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ...........................................................................................11

*In re Cendant Corp. Litigation*,
264 F.3d 201(3rd Cir. 2001) ..................................................................................... passim

*In re Critical Path, Inc. Sec. Litigation*,
156 F.Supp.2d 1102 (N.D. Cal. 2001) ..............................................................................13

*In re Enron Corp. Sec. Litigation*,
206 F.R.D. 427 (S.D. TX 2002)...................................................................................17, 19

*Fischler  v. AmSouth Bancorporation*,
1997 WL 118429 (N.D. FL 1997) .............................................................................11, 17

*Gluck v. CellStar Corp.*,
976 F.Supp. 542 (N.D. TX 1997) ..............................................................................13, 17

*In re Goodyear Tire & Rubber Co. Securities Litigation*,
2004 WL 3314943 (N.D. OH 2004) ..................................................................................16

*Greebel v. FTP Software*,
939 F.Supp. 57 (D. Mass. 1996) ......................................................................................17

*Hoxworth v. Blinder, Robinson & Co.*,
980 F.2d 912 (3rd Cir. 1992) ...........................................................................................19

*Johnson v. Celotex Corp.*,
899 F.2d 1281 (2d Cir. 1990)............................................................................................10

*In re McKesson HBOC, Inc. Sec. Litigation*,
97 F.Supp.2d 993 (N.D. CA 1999) ...................................................................................13

*In re MicroStrategy Inc. Securities Litigation*,
110 F.Supp.2d 427 (E.D. VA 2000) ...........................................................................12, 17

*In re Olsten Corp. Sec. Litigation*,
3 F.Supp.2d 286 (E.D.N.Y 1998) .....................................................................................17

*Osher v. Guess?, Inc.*,
2001 WL 861694 (C.D. CA 2001).....................................................................................11

*In re Oxford Health Plans, Inc. Sec. Litigation*,
182 F.R.D. 42 (S.D. N.Y 1998) .........................................................................................17

*Piven v. Sykes Enterprises, Inc.*,
137 F.Supp.2d at 1306 ......................................................................................................17

*In re Prudential Insurance Co. of America Sales Practices Litigation*,
148 F.3d 283 (3d Cir. 1998)...............................................................................................20

*Roth v. Knight Trading Group*,
228 F.Supp.2d 524 (D.N.J. 2002) ......................................................................................12

*Takeda v. Turbodyne Techs., Inc.*,
67 F.Supp.2d 1129 (N.D. CA 1998) ..................................................................................10

*In re Waste Management*,
128 F.Supp.2d 401 (S.D. TX 2000) ...................................................................................17

*Werner v. Satterlee, Stephens, Burke & Burke*,
797 F.Supp. 1196 (S.D.N.Y. 1992) ...................................................................................10

## FEDERAL STATUTES

15 U.S.C. § 77z-1.......................................................................................................... passim

15 U.S.C. § 78u-4 .......................................................................................................... passim

28 U.S.C. § 1407..................................................................................................................2

## FEDERAL RULES

Fed. R. Civ. P. 23 .......................................................................................................... passim

Fed. R. Civ. P. 42 ................................................................................................................10

## OTHER

Statement of Managers, "The Private Securities Litigation Reform Act of 1995";
141 Cong.Rec. H13691-08 ............................................................................................1, 21

## NATURE OF THE CASE

### I.    Introduction

Shareholders Michael Fehrenbacher, Anandamoy Sahoo, Hamed Hashem Alsabbagh, Ghaith Hashem Alsabbagh, and Rabab Hamed Naji ("Movants" or the "Fehrenbacher Shareholder Group"), respectfully submit this brief in support of the motion, pursuant to Section 27(a)(3) of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(3), and Section 21D(a)(3) of the Securities Act of 1934, 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Rule 42 of the Federal Rules of Civil Procedure, for an order: (i) consolidating the above-titled and related actions, (ii) appointing Movants as Lead Plaintiffs in this action and (iii) approving Movants' selection of the law firms of Chimicles & Tikellis LLP ("Chimicles") and Sarraf Gentile LLP ("Sarraf") as Co-Lead Counsel for the Class.

The relief sought accomplishes the goal of the PSLRA by appointing the class member, or group of class members with the largest financial interest, such as Movants, to serve as Lead Plaintiffs in class actions arising under the federal securities laws. As the Statement of Managers noted, the PSLRA was intended to encourage the class member(s) with the largest financial interest at stake to represent the class as lead plaintiff because class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." 141 Cong. Rec. H13691-08, at H13691 (daily edition Nov. 28, 1995) (Statement of Managers -- "The Private Securities Litigation Reform Act of 1995,").

1

## II.    Stage of Proceeding

As described in greater detail below, on April 8, 2005, Xybernaut Corporation ("Xybernaut" or the "Company") announced that investors could no longer rely on its historical financial statements. On April 15, 2005, the first class action lawsuit related to the disclosures of this press release was filed, and notice of the lawsuit was filed. Subsequently, at least six additional complaints were filed in the District of Delaware, and at least three additional complaints were filed in the Eastern District of Virginia.[1] Although the later complaints asserted a different class period and additional defendants,[2] all of the complaints contain substantially similar allegations and claims. Presently before the Court is Movants' Motion for Consolidation of All Related Actions, Appointment of Lead Counsel, and Approval of Proposed Lead Plaintiffs' Selection of Lead Counsel.

---

[1] Movants are concurrently moving to consolidate the actions filed in the Eastern District of Virginia, to be appointed Lead Plaintiffs of that consolidated action, and to have their choice of counsel for the action approved. The lawsuits in Delaware and Virginia involve claims and defendants that are substantially similar, and, if appointed Lead Plaintiffs, Movants intend to consolidate both actions as Multi-District Litigation under 28 U.S.C. § 1407 and to work with Defendants to transfer or stay one of the pending actions to conserve the resources of the Courts and the parties. On June 10, 2005, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Glancy Binkow & Goldberg LLP, and Spector, Roseman & Kodroff, P.C., filed a motion before the Panel on Multi-District Litigation requesting that the pending cases be consolidated or coordinated in the Eastern District of Virginia for pretrial proceedings. This motion was filed on behalf of the named Plaintiffs in the Eastern District of Virginia.

[2] Several of the more-recently filed Complaints have added Grant Thorton LLP, Xybernaut's former auditor, and Bruce C. Hayden, Xybernaut's current Chief Financial Officer, as defendants.

2

## SUMMARY OF ARGUMENT

1.       The Complaints against Xybernaut present similar claims for relief against essentially the same defendants, based upon a single course of conduct, and should be consolidated in accordance with Rule 42.

2.       As of June 13, 2005, Movants have suffered the largest loss and satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and should be appointed Lead Plaintiffs in accordance with the PSLRA.

3.       Proposed Lead Plaintiffs have chosen Chimicles & Tikellis and Sarraf Gentile as their counsel, and this choice should not be disturbed.

## STATEMENT OF FACTS

### I.    Substantive Factual Allegations

This litigation is a securities class action lawsuit commenced in this Court against

Xybernaut Corporation, and certain executive officers and directors, on behalf of a class

(the "Class") of all persons who purchased shares in the Company between May 10, 2003

and April 19, 2005, inclusive (the "Class Period"),[3] and suffered damages as a result of

defendants' actions. Excluded from the Class are the defendants, members of each

individual defendant's immediate family, any entity in which any defendant has a

controlling interest, and the legal affiliates, representatives, heirs, controlling persons,

successors, and predecessors in interest or assigns of any such excluded party.

The Company researches, develops, manufactures, markets, and sells

mobile/wearable computing and communication systems as well as software and service

solutions. The Complaint charges defendants with violations of the federal securities

laws, including Sections 10(b) and 20(a) of the Securities Exchange Act of 1934

("Exchange Act") and Rule 10b-5 promulgated thereunder.

On April 8, 2005, Xybernaut announced that:

investors and others should refrain from relying upon the Company's historical
financial statements, together with the related audit reports the Company received
from its outside auditors, Grant Thornton LLP, for the years ended December 31,
2002 and 2003, and interim quarterly reports for the quarters ended March 31,
2003, June 30, 2003, September 30, 2003, March 31, 2004, June 30, 2004 and
September 30, 2004.

---

[3] In his Complaint, Mr. Fehrenbacher asserted a class of all persons who purchased
Xybernaut securities between March 27, 2003, and April 19, 2005, inclusive; however,
Movants believe that the broader class period is appropriate.

However, the Company did not fully disclose the nature of its problems until

April 19, 2005, when Xybernaut announced that its Audit Committee had reached the

following determinations:

1. The Company's Chairman and CEO, Edward G. Newman, improperly used substantial Company funds for personal expenses and failed properly to substantiate expenses charged to the Company.

2. Members of the CEO's family employed by the Company were hired and evaluated/not evaluated in direct violation of the Company's anti-nepotism policy and constituted a "protected class" of employees.

3. The employment of certain members of the CEO's family was not disclosed in SEC filings as required by SEC disclosure regulations.

4. There has been a lack of adherence to effective disclosure controls governing the Company's public disclosures and the issuance of press releases.

5. Major transactions were entered into by certain members of senior management in violation of Company internal controls. Certain members of senior management failed properly to advise the Board of material financial conditions regarding major transactions.

6. Certain members of senior management failed to disclose to the Audit Committee and the Board written correspondence by the Company's former Chief Financial Officer outlining serious concerns over the breakdown of internal controls; and

7. Edward G. Newman and Steven A. Newman affirmatively impeded the Audit Committee's investigation in material respects.

In response to the April 8th Press Release, on April 15, 2005, the first class action

related to the instant motion was filed. And, on that same day, a notice was published by

one of the firms filing the complaint and notified members of the proposed class of the

pendency of the action, the claims asserted therein, and the alleged class period.

Additionally, the notice informed the proposed class that, not later than 60 days after the

date of the notice, any member could move the court to serve as lead plaintiff of the

proposed class. (See First Notice annexed as Exhibit A to the accompanying Affidavit of Robert R. Davis ("Davis Affidavit.")[4].)

On May 2, 2005, Mr. Fehrenbacher filed a Complaint that sets forth the general claims at issue in the instant litigation. Specifically, the Complaint alleges, among other things, that:

(1)    Each Individual Defendant knew or recklessly disregarded the fact that Xybernaut had materially overstated its financial condition during the Class Period and had not disclosed critical information to the investing public which would have revealed that the Company's prior statements were materially misleading and false. As a result of their Board memberships and/or executive and managerial positions with Xybernaut, each of the Individual Defendants had access to adverse non-public information about the Company's operations, finances, financial condition, products, revenues, expenses and earnings via access to internal corporate documents, conversations and connections with other corporate officers and employees, and via reports and other information, and each of the Individual Defendants knew or recklessly disregarded the fact that the reported and expected financial results of Xybernaut were materially overstated during the Class Period.

(2)    The Individual Defendants, as a result of their positions of control and authority as officers and/or directors of the Company, were able to and did control the contents of the various quarterly reports, SEC filings, press releases, and presentations to securities analysts pertaining to the Company. Each of the Individual Defendants was

---

[4] Submitted herewith is the Affidavit of Robert R. Davis in support of the Motion for Consolidation of All Related Actions, Appointment of Lead Counsel, and Approval of Proposed Lead Plaintiff's Selection of Lead Counsel. References to the Affidavit are cited as (Davis Aff. at Ex. __.)

provided with copies of the management reports, press releases and SEC filings described in the Complaint, alleged to be misleading, and had the ability and opportunity to prevent their issuance or to cause them to be corrected. As a result, each of the Individual Defendants is responsible for the accuracy of the challenged public reports and releases as "group published" information and is, therefore, responsible and liable for the representations contained in those statements.

(3)     Each of the Individual Defendants is liable as a direct participant in, and co-conspirator with respect to, the wrongs complained of in the Complaint. In addition, the Individual Defendants, by reason of their status as officers and/or directors of Xybernaut, had access to material, non-public information, were "controlling persons" within the meaning of Section 20 of the Exchange Act, and had the power and influence to cause the Company to engage in the unlawful conduct complained of in the Complaint. As a result of their positions of control, each of the Individual Defendants were able to and did, directly or indirectly, control the conduct of Xybernaut's business, the information contained in its filings with the SEC and public statements about its business.

(4)     During the Class Period, Defendants, individually and in concert, directly and indirectly, engaged and participated in a continuous course of conduct to misrepresent the results of Xybernaut's operations, and to conceal adverse material information regarding the financial condition and results of Xybernaut's operations. Defendants employed devices, schemes, and artifices to defraud, and engaged in acts, practices, and the course of conduct described in the Complaint in an effort to increase and maintain an artificially high market price for Xybernaut common stock and other securities. This included the formulation, making, and/or participation in the making of

7

untrue statements of material facts, and the failure to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, which operated as a fraud and deceit upon Plaintiff and the other members of the Class.

This suit seeks to recover compensatory damages on behalf of the Class against all defendants, jointly and severally, for all of the damages sustained as a result of the wrongdoing of defendants. This suit also requests a trial by jury and seeks all fees and expenses incurred by the Plaintiff in bringing this action, including reasonable fees for Plaintiffs' attorneys and experts.

## II.    The Movants

Shareholder, Michael Fehrenbacher purchased 88,070 shares of Xybernaut stock during the Class Period, for a total investment of $122,291.50. (*See* Davis Aff. at B, C.)

Shareholder Anandamoy Sahoo bought 21,300 shares of Xybernaut during the Class Period, for a total investment of $46,467.10. (*See Id*.).

Shareholders Hamed Hashem Alsabbagh, Ghaith Hashem Alsabbagh, and Rabab Hamed Naji (collectively "Alsabbagh Family") are a mother and two sons. Hamed Hashem Alsabbagh bought 25,000 shares of Xybernaut during the Class Period, for a total investment of $45,930.00. Ghaith Hashem Alsabbagh bought 46,000 shares of Xybernaut during the Class Period, for a total investment of $73,240.00. Rabab Hamed Naji bought 65,000 shares of Xybernaut during the Class Period, for a total investment of $124,990.00. In sum, the Alsabbagh Family bought 136,000 shares of Xybernaut during the Class Period, for a total investment of $244,160.00.

Accordingly, Movants have a significant financial interest in the outcome of the

actions and should be appointed as the Lead Plaintiffs here.  See infra at page 13, *et seq.*

## ARGUMENT

As discussed below, the above captioned actions should be consolidated pursuant to Rule 42 of the Federal Rules of Civil Procedure. Moreover, Movants satisfy each of the requirements set forth in the PSLRA for appointment as Lead Plaintiffs and for their selection of Lead Counsel to be approved.

## I. The Above-Captioned Actions Should Be Consolidated

The PSLRA requires the Court to consider any motion to consolidate prior to deciding a motion for appointment of Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Rule 42 of the Federal Rules of Civil Procedure provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). "[C]ourts have taken the view that considerations of judicial economy favor consolidation," *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1285 (2d Cir. 1990), *cert. denied*, 498 U.S. 920 (1990), and, in deciding whether to consolidate actions, "a court must balance the savings of time and effort consolidation will produce against any inconvenience, delay, confusion, or prejudice that may result." *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (N.D. Cal., 1999). "In securities actions where the complaints are based on the same public statements and reports, consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y., 1992) (internal quotation marks omitted).

Here, the actions involve common questions of law and fact. As demonstrated by

10

the various complaints, plaintiffs' allegations present similar claims for relief against

essentially the same defendants, based upon a single course of conduct. *See Osher v.*

*Guess?, Inc.*, 2001 WL 861694, at *2 (C.D. Cal. Apr. 26, 2001). The actions should

therefore be consolidated.

## II.    Movants Should Be Appointed As Lead Plaintiffs For The Class In The Consolidated Action

### A.    The Procedure Mandated By The PSLRA For Appointment Of Lead Plaintiffs

The PSLRA amended the Exchange Act and the Securities Act of 1933

("Securities Act") by adding new sections addressing various matters relating to private

lawsuits brought thereunder. The PSLRA added a new Section 21D to the Exchange Act,

codified as 15 U.S.C. § 78u-4, and a new Section 27 to the Securities Act, codified as 15

U.S.C. § 77z-1. These sections establish a procedure for the appointment of a "lead

plaintiff" in "each private action arising under the [Exchange Act or Securities Act] that

is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15

U.S.C. § 77z-1(a)(1); 15 U.S.C. § 78u-4(a)(1).

This section provides a "rebuttable presumption" that the most "adequate

plaintiff" to serve as Lead Plaintiff is the person that:

> (aa) has either filed the complaint or made a motion in response to
> a notice. . . ;
>
> (bb) in the determination of the court, has the largest financial
> interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal
> Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii); *see also Fischler*

*v. AmSouth Bancorporation*, 1997 WL 118429, * 3-4 (M.D. Fla. 1997); *In re Cavanaugh,*

306 F.3d 726, 729-30 (9th Cir. 2002); *In re MicroStrategy Inc. Securities Litigation*, 110

F. Supp. 2d 427, 433 (E.D. Va. 2000); *In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir.

2001); *Roth v. Knight Trading Group*, 228 F. Supp. 2d 524 (D.N.J. 2002).

First, the plaintiff who files the first action shall publish a notice to the class,

within 20 days of filing the action, informing class members of their right to file a motion

for appointment as lead plaintiff. Exchange Act § 21D(a)(3)(A)(i); Securities Act §

27(a)(3)(A)(i). The first such notice in the above-titled actions was published on April

15, 2005. (See Davis Aff. at Ex. A.)

Second, within ninety days after the publication of the notice of pendency, or as

soon as practicable after the consolidation of multiple related cases if consolidation

occurs after the expiration of the 90-day period, the Court shall consider any motion

made by a class member and "shall appoint as lead plaintiff the member or members of

the purported plaintiff class that the court determines to be most capable of adequately

representing the interests of class members." Exchange Act § 21D(a)(3)(B)(i); Securities

Act § 27(a)(3)(B)(i).

As set forth below, Movants are the "most adequate plaintiff" here.

## B.    Movants Satisfy The Lead Plaintiff Requirements Of The PSLRA

### 1.    Movants Have Complied With The Procedural Requirements Of The PSLRA

On April 15, 2005, counsel for the first-filed Complaint published a notice of

pendency of plaintiff's case pursuant to Section 21D(a)(3)(A)(i), announcing that a

securities class action had been filed against defendants, and advising Xybernaut

shareholders that they had until June 14, 2005 to file a motion to be appointed as Lead

Plaintiffs. (*See* Davis Aff. at Ex. A.) Movants filed the instant motion pursuant to the

published notice, and submit herewith the Sworn Certifications attesting that they are

willing to serve as representatives of the Class and are willing to provide testimony at

deposition and trial, if necessary. (*See* Davis Aff. at Ex. B.) Movants therefore satisfy

the requirement of either filing a complaint or making a motion in response to a

published notice.

### 2. Movants Have The Largest Financial Interest In The Relief Sought By The Class

The PSLRA requires a court to adopt the rebuttable presumption that "the most

adequate plaintiff . . . is the person or group of persons that . . . has the largest financial

interest in the relief sought by the class . . .." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); 15

U.S.C. §77z-1(a)(3)(B)(iii)(I)(bb).

Courts, in applying the PSLRA, have noted that the "largest financial interest"

standard should be viewed broadly in terms of (1) the number of shares purchased during

the class period, (2) the number of net shares purchased during the class period, (3) the

net funds expended during the class period, and (4) the approximate losses suffered by

the plaintiff from the alleged fraud. *See In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp.

2d 1102 (N.D. Cal. 2001); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993,

995 (N.D. Cal. 1999); *In re Cendant Corp. Lit.*, 264 F.3d 201, 262-63 (3d Cir. 2001); *see

also Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) (court considered

number of shares purchased during the class period, overall dollar investment and

estimate of probable losses).

The PSLRA generally limits damages based on a security's market price to no

more than the difference in the purchase or sale prices paid or received, and the "mean

trading price" over a ninety-day period beginning "on the date on which the information

correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. § 78u-4(e)(1). Consistent with this mandate, Movants have calculated damages according to the following method: Each purchase price was multiplied by the number of shares purchased, and the resulting amounts were then totaled to obtain the sum value of the purchases. The sum value of the purchases was then reduced by the product of the total shares purchased and the settle-out amount[5] to obtain the loss.[6]

Based on the certification submitted by the various plaintiffs in the related actions, the proposed Lead Plaintiffs have the largest financial interest in the relief sought by the class. Movants purchased 245,370 shares of Xybernaut stock, for a total investment of $412,918.60, and a total loss of $381,020.50 under the Movants' Class Period, and purchased 234,370 shares of Xybernaut stock for a total investment of $409,618.60, and a total loss of $372,953.30 under the Class Period of the First Complaint. (*See* Davis Aff. at Ex. B, C.)

Individually, Mr. Fehrenbacher purchased, 88,070 shares of Xybernaut stock, for a total investment of $122,291.50, and lost $110,842.40 under Movants' Class Period. Mr. Fehrenbacher purchased 77,070 shares of Xybernaut stock, for a total investment of

---

[5] Since the lead plaintiff selection begins prior to the expiration of the ninety-day period, the Movants are basing the calculation of the settle-out price - $0.13 - on the mean trading price of Xybernaut using less than ninety-days, from April 19, 2005 through June 13, 2005. Additionally, Movants have provided numbers using the settle-out price and class period contained in the first-filed Complaint ($.14 and March 27, 2003 to April 8, 2005, respectively) in the event the Court believes that these are the appropriate numbers for comparison. (*See* Davis Aff. at Ex. D.)

[6] None of the Movants has sold their Xybernaut shares.

14

$118,991.50, and lost $104,348.20[7] under the Class Period of the First Complaint. (*Id.*)

Mr. Sahoo bought 21,300 shares of Xybernaut stock during the Class Period, for a total investment of $46,467.10. Mr. Sahoo lost $43,698.10 under Movants' Class Period, and $43,485.10 under the Class Period of the First Complaint.

The Alsabbagh Family bought 136,000 shares of Xybernaut, for a total investment of $ 244,160.00. The Alsabbagh Family lost $226,480.00 under Movants' Class Period and $225,120.00 under the Class Period of the First Complaint.[8]

As of June 13, 2005, neither Movants nor the undersigned counsel have received any lead plaintiff motion by a plaintiff or putative class member who claims to have suffered greater losses during the Class Period than those claimed here. Additionally, of all the Plaintiffs who filed Complaints, Mr. Fehrenbacher suffered the largest loss. Accordingly, Movants have satisfied all of the PSLRA's prerequisites for appointment as lead plaintiffs pursuant to Section 21D(a)(3)(B) of the Exchange Act.

The presumption that the person or group of persons with the largest loss should be Lead Plaintiff "'may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *In re Cendant Corp. Lit.*, 264 F.3d 201, 266-267 (3d Cir. 2001) (quoting 15 U.S.C. § 78u-

---

[7] Under the original proposed class period, two of Mr. Fehrenbacher's purchases would fall outside of the end of the class period and he would be limited to a settleout amount of $0.19. (*See* Davis Aff. at Ex. D.)

[8] More specifically, Hamed Hashem Alsabbagh lost $42,680.00 under Movants' Class Period and $42,430.00 under the Class Period of the First Complaint; Ghaith Hashem Alsabbagh lost $67,260.00 under Movants' Class Period and $66,800.00 under the Class Period of the First Complaint; and Rabab Hamed Naji lost $116,540.00 under Movants' Class Period and $115,890.00 under the Class Period of the First Complaint.

4(a)(3)(B)(iii)(II)).  Neither exception applies to Movants.

As described above, Movants have a substantial financial interest in the instant litigation.  Further, Movants are not subject to unique defenses that render them incapable of representing the class.  *See In re Goodyear Tire & Rubber Co. Securities Litigation*, 2004 WL 3314943, at *5 (N.D. Ohio May 12, 2004) (holding that "to exclude a foreign investor from lead plaintiff status on nationality grounds would defy the realities and complexities of today's increasingly global economy").

Finally, Movants are a manageable and cohesive group.  Under Third Circuit precedent, groups with more than five members are generally presumed to be too large to work effectively.  *Id.*  Movants are comprised of two individuals and a family of three, and thus are within the range of size endorsed by the Third Circuit.  *See id.*  Additionally, although Movants are comprised of five individuals, the nature of the relationships among the Alsabbagh family, makes Movants the functional equivalent of a group of three, and a group that can work together effectively.  See Id.

Under these circumstances, Movants satisfy all the PSLRA's prerequisites for appointment as Lead Plaintiffs in these class actions, and should be appointed as Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii) and §77z-1(a)(3)(B)(iii).

>    **3.    Movants Satisfy The Requirements Of Rule 23 Of The Federal Rules Of Civil Procedure**

The PSLRA provides that Lead Plaintiffs must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc); 15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

>    (1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class, (3) the claims
or defenses of the representative parties are typical of the claims or
defenses of the class, and (4) the representative parties will fairly and
adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In determining whether the prospective Lead Plaintiffs satisfy the requirements of

Rule 23, a *prima facie* showing that the class member in question satisfies the

requirements of Rule 23(a) is sufficient. *Cendant*, 264 F.3d at 263; *In re MicroStrategy*

*Inc. Securities Litigation,* 110 F. Supp. 2d at 435-436; *Greebel v. FTP Software,* 939 F.

Supp. 57, 64 (D. Mass. 1996) (holding that a *prima facie* showing that a PSLRA movant

satisfies the requirements of Rule 23 is sufficient.); *In re Enron Corp. Sec. Litig.,* 206

F.R.D. 427, 441 (S.D. Tex. 2002) (Courts thus limit their inquiry to the typicality and

adequacy prongs of Rule 23(a), and defer examination of the remaining requirements

until class certification); *In re Waste Management,* 128 F. Supp. 2d 401, 411 (S.D. Tex.

2000); *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998)

("[t]ypicality and adequacy of representation are the only provisions relevant to a

determination of lead plaintiff under the PSLRA.") (*citing Gluck v. Cellstar Corp.,* 976 F.

Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. AmSouth Corporation*, 176 F.R.D. 583

(M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 296 (E.D.N.Y.

1998).

Thus, specifically, the analysis at this stage of the litigation focuses upon the

issues of typicality and adequacy. *Piven v. Sykes Enterprises, Inc.*, 137 F. Supp. 2d 1295,

1306; *Fischler*, 1997 WL 118429, at * 8; *In re Oxford Health Plans, Inc. Sec. Litig.*, 182

F.R.D. 42, 49 (S.D.N.Y. 1998). "The analysis inevitably comes down to the one question

of whether Movant will fairly and adequately represent the interests of the class."

17

*Fischler,* 1997 WL 118429, at *2. This interpretation is further supported by the PSLRA,

which provides that the presumption in favor of appointing Movants as Lead Plaintiffs

"may be rebutted only upon proof by a member of the purported plaintiff class that the

presumptively most adequate plaintiff-- (aa) will not fairly and adequately protect the

interest of the class; or (bb) is subject to unique defenses that render such plaintiff

incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II);

§77z-1(a)(3)(B)(iii)(II).

As part of this determination, the Court applies the following Rule 23 principles:

(1) Typicality:  whether the movants' circumstances are "'markedly different or the legal

theory upon which the claims [of that movant] are based differ[] from that upon which

the claims of other class members will perforce be based,'" and, (2) Adequacy:  whether

the movant "'has the ability and incentive to represent the claims of the class vigorously,

[whether it] has obtained adequate counsel, and [whether] there is [a] conflict between

[the movant's] claims and those asserted on behalf of the class.'" *Cendant,* 264 F.3d at

265 (quoting *Hassine v. Jeffes,* 846 F.2d 169, 177, 179 (3d Cir. 1988)) (alterations in

original).

In making this determination, which is a product of the Court's independent

judgment, the Court may consider the pleadings, the movants' application and any other

information the Court may require to be submitted.[9]  Once this *prima facie* showing is

made, it is a rebuttable presumption that the Movants will serve as lead plaintiffs.

Once the presumptive lead plaintiffs are identified, the Court should determine

whether any other movants, who are class members, have rebutted the presumption.  *Id.*

---

[9]    In this initial inquiry, the Court does not consider arguments by other members of
the proposed plaintiff class. *Cendant,* 264 F.3d at 263-264.

at 268. Once the Court reaches this stage, the inquiry is limited to whether another class member can prove that the presumptive lead plaintiffs will not do a fair and adequate job. *Id.*

Here, the Movants easily meet these requirements and should be appointed Lead Plaintiffs.

### a.    Movants' Claims Are Typical

The typicality requirement is easily satisfied here since the Movants' circumstances are not "markedly different" and the Movants' claims are based on the same legal theory upon which the claims of other class members will be based. *See Cendant,* 264 F.3d at 265; *see also, Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992); *Enron,* 206 F.R.D. 427, 441 (S.D. Tex. 2002) (Typicality requirement is satisfied if a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory); *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479-80 (5th Cir. 2001).

Movants, like all members of the Class, allege, *inter alia,* that defendants violated the federal securities laws. Movants, like all members of the class allege that Xybernaut, and the other defendants, mislead the investing public as to financial condition, and accounting practices. The interests of Movants and other Class members are closely aligned and Movants are, therefore, typical of the other members of the Class.

### b.    Movants Are Adequate Representatives

The adequacy requirement is satisfied here because the Movants have the ability and incentive to represent the claims of the class vigorously, have obtained adequate

counsel, and there is no conflict between the Movants' claims and those asserted on behalf of the class. *See Cendant,* 264 F.3d at 265.

As between the Movants and the proposed class members, there is no evidence of any antagonism or unique defenses that render Movants incapable of adequately serving as Lead Plaintiffs. As detailed above, Movants share substantially similar questions of law and fact with the members of the proposed class, their claims are typical of the members of the class, and they have already taken significant steps to advance this litigation.

Movants have demonstrated their adequacy to serve as a Lead Plaintiffs by evincing a strong desire to prosecute this action on behalf of the Class, and have shown that they are "'willing' and 'able' to 'take an active role in and control the litigation and to protect the interests of absentees.'" *Berger,* 257 F.3d at 479. Movants have made this motion to be appointed Lead Plaintiff and have sustained substantial losses from their investment in Xybernaut and are, therefore, extremely motivated to vigorously pursue the claims in this action.

Finally, the Movants have selected and retained counsel highly experienced in prosecuting securities class actions such as this to represent them. *See Section III, below.* For these reasons, the Movants satisfy the adequacy requirement. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 308 (3d Cir. 1998), *cert. denied,* 525 U.S. 1114 (1999).

**III.    The Court Should Approve Movants' Choice Of Lead Counsel**

The PSLRA vests authority in the Lead Plaintiffs to select and retain counsel, subject to approval of the Court.  15 U.S.C. §78u-4(a)(3)(B)(v); 15 U.S.C. §77z-

1(a)(3)(B)(v). The Court should not disturb the Lead Plaintiffs' choice of counsel unless "necessary to protect the interest of the plaintiff class." *See* 141 Cong. Rec. H13691-08, at H13700 (daily edition Nov. 28, 1995) (Statement of Managers -- "The Private Securities Litigation Reform Act of 1995,"); 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); 15 U.S.C. §77z-1(a)(3)(B)(iii)(II)(aa).

In the present case, Movants have retained Chimicles and Sarraf, which firms seek to be appointed as Co-Lead Counsel for the Class. Chimicles and Sarraf are leading class action law firms, with national practices that specialize in complex litigation with an emphasis on securities, antitrust and consumer cases. Chimicles and Sarraf strive to advance the interests of our clients by recovering money they have lost and by obtaining other appropriate relief to which they are entitled, and collectively, our firms have succeeded in recouping hundreds of millions of dollars of losses for our institutional and individual clients. The firms have successfully litigated cases involving such issues as stock price manipulation, false SEC filings, fraudulent limited partnership offerings, fraudulent mutual fund offerings and others against the largest US corporations. Since the passage of the PSLRA, the firms have placed special emphasis on the successful representation of public and private institutional investors as "Lead Plaintiffs" having been appointed as lead counsel in numerous cases brought after the enactment of the PSLRA. *See* Davis Aff. at Ex. E, F.)

Importantly, these firms possess a unique combination of experience, having demonstrated an unparalleled dedication and unmatched achievement in successfully prosecuting these types of actions. In November, 2002, after almost five-years of hard-fought litigation, Chimicles, along with other counsel, conducted a six week securities

fraud jury trial in the federal district court in Los Angeles that resulted in a verdict of

$185 million in favor of a class of 18,000 real estate investors. *In re Real Estate Associates*

*Limited Partnership Litigation*, CV 98-7035 DDP, U.S. District Court, Central District of

California.[10]  Not only was this verdict among the top 10 verdicts of 2002, it is the largest

plaintiffs' verdict in any securities class action in the history of the PSLRA. These firms

have demonstrated to any adversary a willingness and capability to fully prosecute these

cases and are uniquely positioned to provide the highest quality legal services to achieve

the best results for the Xybernaut stockholders.  Thus, the Court may be assured that, by

granting Movants' motion, the Class will receive the highest caliber of legal

representation.

---

[10]     The Chimicles firm was one of the Court-appointed co-lead counsel in the REAL
Litigation.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court: (i)

consolidate the above-titled and related actions; (ii) appoint them Lead Plaintiffs in the

consolidated action; and (iii) approve Chimicles & Tikellis and Sarraf Gentile to serve as

Co-Lead Counsel for the class.

Dated: June 14, 2005                        CHIMICLES & TIKELLIS LLP

                                            _____
                                            Pamela S. Tikellis (#2172)
                                            Robert J. Kriner (#2546)
                                            A. Zachary Naylor (#4439)
                                            Robert Davis (#4536)
                                            One Rodney Square
                                            P.O. Box 1035
                                            Wilmington, Delaware 19899
                                            (302) 656-2500

                                            Proposed Lead Delaware Counsel

OF COUNSEL:

Sarraf Gentile
Ronen Sarraf (of the New York bar)
Joseph Gentile (of the New York bar)
111 John Street, 8th Floor
New York, NY 10038

Proposed Lead Counsel

Bruce Murphy, Esq.
265 Llwyds Ln.
Vero Beach, Florida 32963
(772) 231-4202